385 A.2d 583

Bernard TURK, Appellee,

v.

D. KATZ AND SONS, INC., Appellant.

Superior Court of Pennsylvania.

Argued March 21, 1977.

Decided April 13, 1978.

Maxwell H. Cohen, Stroudsburg, for appellant.

John J. Pentz, Jr., Stroudsburg, submitted a brief for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

This is an appeal from the order of the Court of Common Pleas of Monroe County, Civil Division, in equity, that decreed specific performance of an agreement of sale of real estate by the defendant-appellant, D. Katz and Sons, Inc.

The facts are as follows: The plaintiff-appellee, Bernard Turk, (hereinafter called Buyer) had undertaken to purchase certain real estate in Stroud Township, from the defendant-appellant, D. Katz and Sons, Inc. (hereinafter called Seller) for Thirty-five Thousand ($35,000.00) Dollars, of which Five Hundred ($500.00) Dollars was paid as a down payment on account of the purchase price in the form of a check held in escrow by the attorney who at the time of the agreement of sale, by mutual consent of the parties, represented both parties in drafting the agreement. The portion of the agreement relative to this appeal reads as follows:

"11. a.   Seller shall be responsible in obtaining the necessary zoning change or variance from an R–2 zone to permit use of the premises in conjunction with the operation of Beaufab Mills, Inc. located on an adjacent property, either by way of variance or reclassification. The change of use will include storage facilities and the renovation or extension of existing buildings or the construction of additional structures for use with Beaufab Mills, Inc., as a dye house or manufacturing plant. Seller will prepare, execute and prosecute all petitions and documents required by the Municipality of Stroud Township in order to effectuate the intent of this provision.

"11. c.   In the event said approvals are not obtained as set forth above, the deposit shall be returned to the Buyer and this Agreement shall be null and void and of no further force and effect."

So the Seller undertook not only to convey the property for the named consideration, but also agreed to obtain favorable zoning action by the grant of a variance by the zoning board or amendment of the zoning ordinance by the township supervisors, by permitting the Buyer to use the premises in conjunction with a business already being operated by the Buyer in a different location.

The Seller did apply to the Zoning Hearing Board for a special use or variance but the application was denied on July 13, 1971. The defendant engaged a surveyor who in May, 1972, prepared a plan of the locality with a mylar overlay demonstrating proposed changes in the relevant zoning district. The Seller never made an application to the Board of Supervisors of Stroud Township, who constituted the only agency empowered to amend the zoning plan to effectuate the change needed. He decided not to seek the change because of his belief that it would be unsuccessful.

During this period, the Buyer continually asked for a report of progress on the zoning matter and was assured that the matter was in progress. The Seller's contention of laches is without merit.

On April 13, 1973, at the Seller's request, the mutual counsel wrote a letter to the Buyer asserting the futility of further expenditures of time and money for the purpose of obtaining the zoning variance and returned the $500.00 deposit check and concluded ". . . this matter is unfortunately at an end."

The Buyer then secured counsel to represent him in the matter who sent a letter dated May 25, 1973 to Seller's counsel advising him that the Buyer was willing to comply with all the terms of the agreement calling for performance on his part and waive the requirements of performance by the Seller stated in Paragraph 11 a. of the contract, supra, regarding the zoning change.

Seller declined to convey and the action in equity for specific performance was instituted by the Buyer.

The court below entered a Decree Nisi based on the following reasoning:

"The Decree Nisi directing specific performance was predicated upon the proposition that the buyer in an agreement to sell real estate who is prepared to render full performance of his own undertakings may waive complete performance of the undertakings assumed by the seller and call upon the seller to render such performance as may lie within his capability, *provided* that the subject of the waiver is for the sole benefit of the buyer. Here, the heart of the controversy is centered upon this proviso." (Emphasis—the opinion writer below)

In the Decree Nisi the finding of fact pertinent to this appeal is as follows:

"36. The provisions in Paragraph 11 a. and Paragraph 11 c. were inserted in the contract for the sole benefit of the vendee."

The Seller excepted to this finding and asks the court to find:

"The provisions contained in Paragraph 11 (a) and Paragraph 11 (c) were inserted in the contract for the mutual benefit of both parties."

The court below in an exhaustive final opinion (as the specific matter contained in this appeal seems to be a matter of first impression) collected the cases listed by both parties and carefully distinguished and explained them and then reinstated the Decree Nisi which directed the conveyance of the property as the final decree.

However, in his final decree, the court below amended its finding to read:

"36. The provisions in Paragraph a. were inserted in the contract for the sole benefit of the vendee; the provisions of Paragraph 11 c were inserted in the contract for the mutual benefit of both parties."

If we agree with the court below as to 11 (a), we never reach the mutuality of 11 (c).

As the court below put it:

"Analysis of Paragraph 11 of the instant Agreement in the light of the foregoing authorities will show that it

contains three operative elements" (1) a *promise* by Defendant Seller to obtain zoning action favorable to the purposes of Plaintiff Buyer; (2) an implied *condition precedent* that Plaintiff Buyer will not be liable for the purchase price unless and until the said promise is fulfilled; and (3) an express *condition subsequent*, effective in the event of failure to obtain favorable zoning action, terminating all further obligations of the parties under the Agreement except the obligation of Defendant Seller to return Plaintiff's deposit money.

"The first two elements are found in Paragraph 11 a:

" 'Seller shall be responsible in obtaining the necessary zoning changes or variance from an R–2 zone to permit use of the premises in conjunction with the operation of Beaufab Mills, Inc., located on an adjacent property, either by way of variance or reclassification. The change of use will include storage facilities and the renovation or extension of existing buildings or the construction of additional structures for use with Beaufab Mills, Inc., as a dye house or manufacturing plant. Seller will prepare, execute and prosecute all petitions and documents required by the Municipality of Stroud Township in order to effectuate the intent of this provision.'

"Here, the Plaintiff Buyer assumed no legal obligation to obtain favorable zoning action, as in *BLISS v. CARTER*,[1] supra, where the Court treated this as a factor indicating that rezoning was solely for the benefit of the buyer, a condition which he was entitled to waive. On the contrary, it was Defendant Seller who assumed the legal obligation to obtain favorable zoning. Consequently, the waiver given by Plaintiff Buyer had the double significance of dispensing with a condition (as in *BLISS*), but also of releasing Defendant Seller from a portion of the performance which he had undertaken to render. Both of these had been for the sole benefit of Plaintiff.

"The third element is found in Paragraph 11 c:

1. *Bliss v. Carter*, 26 Mich.App. 177, 182 N.W.2d 54, 56 (Mich.App., 1970)

" 'In the event said approvals are not obtained as set forth above, the deposit shall be returned to Buyer and this Agreement shall be null and void and of no further force and effect.'

"This clause deals with a subject in which both Seller and Buyer have important interests: identifiable points in time, marking the commencement, duration, and termination of their respective rights and obligations under the Agreement. Various methods of determination are available. Where the obtaining of favorable zoning is a prominent consideration, this may be recognized as a contingent event: positive, if granted; negative, if denied. Determination of the time element may be made either independently, in association with, or dependent upon the contingency (positive or negative) of desired zoning . . ."

The court in making its new finding had this to say:

"From this correction, it follows that, while Plaintiff was entitled to waive the failure to obtain favorable zoning action insofar as such action was part of the performance promised him by Defendant in Paragraph 11 a, he was not entitled to unilaterally waive the failure insofar as it was a condition determining the continued vitality of the Agreement under Paragraph 11 c. Acceptance of this view leads to the further question: Was the condition of failure to obtain the approvals fulfilled on April 13, 1973 when Defendant's attorney returned the deposit check and sought to declare the Agreement terminated? The Supervisors of Stroud Township constituted the only agency possessing authority to approve or to deny an application for amendment of the Zoning Ordinance, and the record is devoid of evidence that Defendant ever made such an application, formal or informal, to the Supervisors. Under Paragraph 11 a, Defendant had undertaken to 'prepare, execute and prosecute all petitions and documents required by the Municipality of Stroud Township in order to effectuate the intent of this provision.' In asserting failure to obtain approval, Defendant is asking the Court to accept, as equivalent to an authori-

tative determination by the Supervisors, his own personal assessment of the probability of success for such an application, if one had been made. In *FUNKE v. PAIST, et ux.*, supra, the defendants sought to avoid the effect of an agreement of sale, contingent upon obtaining approval by the Zoning Board, on the ground that approval had not been obtained. The Court held that the Zoning Board's informal letter to plaintiff, advising him that no formal approval was necessary, was sufficient. There, plaintiff had addressed the proper authority; here, there is no evidence of communication of any kind on the subject of zoning change between Defendant and the Supervisors. As a result, the failure to obtain approval, relied upon as a condition terminating the Agreement, has not been established.

"Termination of the Agreement under Paragraph 11 c required two elements: (1) failure to obtain the approvals —which, as we have just observed, has not been properly established, and (2) return of the deposit. In the absence of the first element, Defendant's attorney could not, by returning the deposit, effect a termination of the Agreement.

" . . . In the instant case, since the Agreement was in full force when Plaintiff's new counsel addressed the letter of May 25, 1973 to the attorney for Defendant, the waiver contained therein dispensing with Defendant's undertaking to obtain favorable zoning action was timely and effective."

It is clear in this case that the condition was inserted solely at the insistence of the Buyer as the Seller had no desire whatsoever for a change of zoning. The finding of the court below is amply supported by the evidence. In *Funke v. Paist*, 356 Pa. 594, 52 A.2d 580 (1947), the condition is almost identical to the condition in 11 (a) and the court held that it was solely for the benefit and protection of the purchaser.

However in *Funke* the zoning board had informed the purchaser that its approval was unnecessary. Here, the

Seller never petitioned the change from the Township Supervisors. See also, *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 302 A.2d 347, 351 (1973) where the court, 451 Pa. at page 145, 302 A.2d at page 351 in speaking of interpretation of the language in a written contract said:

"Such an important condition in a written agreement of sale must be given effect unless altered by the parties or specifically waived by the party in whose favor the condition runs in the agreement."

The contract and conduct of the parties show that there was no definite time limit established for obtaining the zoning change or variance. In 11 b the delivery of deed and closing were to take place after the approval of the zoning change. There was no time limit for obtaining the approvals. Further, the Seller and its attorney commenced preparations for the second alternative, and Buyer was advised by Mr. Katz, up to the time that Seller attempted to terminate the contract, that Seller was proceeding with the zoning change through Attorney Cohen. Thus, there was no stated time for the zoning change, and the conduct of the Seller and the attorney who was then representing both parties confirms this fact. The lower court correctly held that the waiver by the Buyer was timely.

The Seller contends that 11 a required it only to pursue the first application for a variance to the zoning board which was denied. However, the paragraph makes it clear that the Seller must pursue both avenues if necessary to obtain a zoning change. 11 a provides:

"Seller shall be responsible in obtaining the necessary zoning change or variance . . . either by way of variance or reclassification."

Only upon failure to secure the change by way of variance from the zoning board or reclassification by the township supervisors could the provision be fulfilled. The Seller indicated a clear understanding of the provision as an engineer was employed to prepare the necessary plans for submission to the supervisors for the change required. This evidence clearly indicated the intent of the Seller to attempt to secure

the change required. However, he failed to proceed as found by the court below.

Agreeing with the court below that the zoning condition was for the sole benefit of the Buyer, we need not reach or discuss the mutuality of paragraph 11 (c).

Decree affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, J., concurs in the result.