# Patel v. Dave

C.P. of Monroe County, No. 11372 CIVIL 2013

*John Molnar*, for plaintiff.
*Kathleen E. Walters*, for defendants.

WILLIAMSON, *J.*, March 4, 2015—Plaintiff, as Administratrix of the Estate of Prafulichandra S. Patel, (hereafter "Estate"), filed a Complaint seeking ejectment, replevin, and damages for breach of contract. Defendants filed a counterclaim for intentional misrepresentation. The matter involves real property with a motel on it, that the Decedent, Prafullchandra S. Patel, agreed to sell to Sureschandra G. Dave.[1] Mr. Patel died before suit was instituted, and the Estate became the Plaintiff. Defendant Krishna A. Dave was also a named party in the transaction.

---

1. The Complaint and subsequent documents of both parties spell Defendant's name Sureschandra G. Dave, but the Agreement of Sale spells Defendant's first name as Sureshchandra, and we will cite to the spelling in the Complaint.

A hearing was held on the parties' claims on January 27, 2015.

## FINDINGS OF FACT

1. Prafullchandra S. Patel (hereafter "Decedent") was the owner of real property located on Route 115, Ross Township, Monroe County, Pennsylvania known as the Gateway Motel (hereafter "motel property").

2. In or about June 17, 2010, Decedent entered into an agreement of sale (hereafter "AOS") to sell the motel property to Sureschandra G. Dave and his daughter-in-law, Krishna A. Dave.

3. Ashutosh Dave, the son of Sureschandra G. Dave, was involved in the sale negotiations with his father and the Decedent.

4. Jaesh Patel, the son-in-law of Prafullchandra S. Patel, was also involved in some of the negotiations between the parties.

5. The Decedent worked out a purchase price, interest rate and owner financing on the sale of the property with Mr. Dave and his son.

6. Jaesh Patel suggested to the Decedent that he structure the sale as a Lease/Option to Purchase, but, the Defendants objected, so a compromise was reached for an installment sale with a signed quit-claim deed held in case of default.

7. The purchase price was $305,000, with $105,000 paid in advance and the balance of $200,000 to be paid in monthly installments of principal and interest at 7% amortized over ten (10) years.

8. The parties agreed the Defendants would sign a mortgage and note and Decedent would sign a deed conveying title to the motel property in favor of the Defendants, all of which were to be held in escrow until the Defendants made thirty-six (36) monthly payments.

9. The Deed and Mortgage were to be held in escrow by the Decedent's attorney, C. Daniel Higgins, Sr., until the above payments were completed, at which time they would be recorded.

10. The AOS, Deed, Mortgage, Note and Quit-Claim Deed were all drafted by Attorney Higgins.

11. Attorney Higgins retained the Deed, Mortgage and Quit-Claim Deed signed by the parties.

12. A settlement sheet was prepared by Commonwealth Land Abstract Company and a closing was held at their office that was shared with Attorney Higgins on June 17, 2010.

13. The settlement sheet listed payment of attorney fees to Attorney Higgins by the Seller (Decedent).

14. Defendants chose not to seek their own legal counsel in the transaction.

15. Negotiations as to the sale were between the parties.

16. The transaction closed in June 2010 and Defendants took possession of the motel property at that time.

17. In November of 2012, the motel suffered damage as the result of a storm.

18. Prior to the storm damage, the parties agreed to

an Amendment to the Agreement of Sale reducing the amount of monthly payments beginning March 2012, by Agreement signed October 18, 2012.

19. Defendants stopped making payments in January 2013.

20. The Decedent died in January 2013.

21. Notice of default was sent by the Decedent's attorney to the Defendants by letter dated May 1, 2013.

22. In addition to missing monthly payments, the Defendants did not provide proof of insurance as required and failed to pay real estate taxes for 2012, 2013 and 2014.

23. An estate was raised for the Decedent and Shantiben P. Patel was appointed Administratrix.

24. By letter dated August 1, 2013 from Attorney Higgins to the Defendants, the Defendants were advised the Quit-Claim Deed was going to be recorded due to their default, and that they had twenty (20) days to vacate the motel property.

25. On or about October 18, 2013, Defendants obtained a bank check for $4,000 payable to Shantiben Patel to be applied to the balance due at that time, but the check was not accepted as it would not have covered the full outstanding balance.

26. In or about June 5, 2014, the Defendants received a check from Brethren Mutual payable to Suresh G. Dave and Gateway Motel and Prafullchandra Patel and Shantiben P. Patel for insurance proceeds from the November 2012 storm damage.

27. The insurance proceeds check has remained uncashed and in the possession of the Defendants.

28. The Quit-Claim Deed in favor of Prafullchandra S. Patel was recorded on July 23, 2013 at Record Book 2424 Page 1144.

29. The Defendants remain in possession of the motel property.

## DISCUSSION

The Estate seeks an order in ejectment to remove the Defendants from the premises. The Estate also seeks an order in replevin to receive the insurance proceeds check and an award of damages for breach of contract. The Defendants have raised issues in their New Matter of misrepresentations as to value of the property and prior income from the business, failure to allege a breach of contract as a Mortgage and Note were signed, and unconscionability in recording the Quit Claim Deed due to the amount of the payments made by the Defendants. The Defendants also allege damages of their own in a Counter-Claim as a result of misrepresentations by the Decedent.

Plaintiff first seeks equitable relief for the ejectment of the Defendants from the motel property. We find the Defendants failed to perform under the terms of the Agreement of Sale. As such, they were in default of the Agreement and one of the remedies for the Plaintiff/ Decedent was to file the Quit-Claim Deed previously signed by the Defendants, giving Plaintiff/Decedent clear title to the motel property. Legal title remained recorded in Plaintiff/Decedent's name, with the Defendants having an equitable interest pursuant to terms of the agreement

of sale. The filing of the Quit-Claim Deed in the event of default was an assurance to Plaintiff/Decedent he would have clear title in the event of a default. The default by the Defendants also ended their equitable interest. Under the terms of the Agreement of Sale, and filing of the Quit-Claim Deed, the Defendants no longer had a right to occupy the motel property. Therefore, the request for ejectment will be granted.

There are certain defenses to equitable relief including unconscionability of contract, laches (delay), unclean hands of the Plaintiff, and estoppel. The Defendant contends Plaintiff's request for ejectment should be barred due to unconscionability and/or unclean hands. Specifically, Defendants argue it is unconscionable for them to vacate the property after making payments in excess of $170,000 to the Plaintiff. Defendants further argue Plaintiff misrepresented the true value of the property and the income of the motel business on the property.

We do not find the result to be unconscionable. The Defendants negotiated with the Decedent on a price and terms of sale. There was no evidence that Defendants failed to understand the terms of their bargain. There was no evidence that the Defendants failed to understand the risks of any default. Although the Defendants made a sizeable down payment, and made additional payments thereafter, the amount paid does not automatically make the outcome unconscionable, nor are the terms of the bargain made unfair. It is no different than if a deed were immediately exchanged and recorded to the Defendants and a mortgage recorded for seller financing; except that in Monroe County, Pennsylvania it takes a long time to

file and complete a mortgage foreclosure proceeding, leaving a seller out of possession following a default that much longer. The terms of this transaction were not much different than many seller financed sales in Monroe County, Pennsylvania.

Furthermore, the Defendants could have retained their own attorney and appraisal regarding the property. There was no evidence they were forced to proceed as they did. It appears extensive negotiations took place back and forth between the parties. Also, the Defendant's son, who was involved in the negotiations, had previously purchased a gas station and used his own attorney. The Defendants contend Attorney Higgins represented both parties in the matter which was to their detriment. Again, Defendants appeared savvy enough to know they could retain their own attorney to review the terms of the transaction.

There also was no evidence that Attorney Higgins represented to the Defendants he was their attorney, or that he acted on their behalf or advised that they did not need their own legal counsel. The only evidence came from Defendants' testimony which included the Defendant's son who simply stated that Plaintiff suggested the parties share the cost of one attorney. However, the settlement sheet indicates that only the seller was billed for Attorney Higgin's representation.[2] There was no evidence Attorney Higgins accepted any payment from the Defendants or mislead the Defendants in any way.

---

2. The settlement sheet did include a charge to the Defendants for preparation of a Mortgage and Note, a customary cost of a Buyer in this type of transaction, but not an indication the attorney represented the Buyers.

The Defendants also claim the Decedent acted improperly by representing that an appraisal was done which supported the sale price. Again, the Defendants appeared savvy enough to request their own appraisal, or have an expert review the income and expenses purported by the Decedent. There was no evidence supporting Defendant's contention that Decedent acted with unclean hands or in some other manner that was a defense to the ejectment claim.

It is also noted that the Plaintiff tried to work with the Defendants, and lowered the monthly payment at the request of the Defendants. Yet, the Defendants failed to make payments thereafter, failed to pay the taxes due, or provide proof of insurance.

Defendants also contended at trial that they tried to make a payment of $4,000 and offered to obtain another $4,000 to pay the Plaintiff once they were in default. However, the amount was not enough to cure the default, and there were still unpaid taxes, putting the property at risk for a tax sale. The Defendants also suffered damages to some of the motel units due to a storm. They produced a copy of an insurance check payable to them and Decedent and Decedent's wife jointly for the damage. Defendants allege the Decedent's failure to sign the check prevented them from using the proceeds to repair the units. However, the Defendants were in default on payments to the Decedent at the time and there was no legal requirement he endorse the check to the Defendants. Under the circumstances, we can understand the reluctance of the Decedent to do so. Therefore, none of the evidence supported a defense to the request in equity for ejectment.

The Plaintiff has also requested damages for breach of contract. The Defendant asserts that there can be no breach of the agreement of sale because a Mortgage and Note were executed. Defendant contends the terms of the Agreement of Sale merged into the Mortgage and Note. Generally, an agreement of sale merges into the deed, and no recovery can be made on the earlier agreements. *Perrige v. Horning*, 440 Pa. Super. 31, 564 A.2d 1183 (1995). However, delivery of the deed is necessary to render it legally operative. *Herr v. Bard*, 355 Pa. 578, 50 A.2d 280 (1947). Conditional delivery of a deed or delivery into escrow is not delivery to a buyer. *Stephenson v. Butts*, 187 Pa. Super. 55, 142 A.2d 319 (1958). Here, the deed to the Defendants was held in escrow by Attorney Higgins, pursuant to the terms of the Agreement of Sale. Therefore, there was no delivery of the deed to the Defendants and no merger of the earlier agreement of sale. *See also Atiyeh v. Bear*, 456 Pa. Super. 548, 690 A.2d 1245 (1997).

This same analysis applies to the Mortgage and Note. The Note evidenced the payment terms required by the Agreement of Sale. The mortgage was collateral for the payment, but remained unrecorded per the parties' Agreement of Sale terms. An unrecorded mortgage has no bearing on the issue at hand; namely failure to make payments required by the Agreement of Sale and the Agreement of Sale controls. *See Turk v. D. Katz & Sons, Inc.*, 254 Pa. Super. 177, 385 A.2d 583 (1978); *Chrysler First Bus. Credit Corp. v. Gourniak*, 411 Pa. Super. 259, 601 A.2d 338 (1992). Therefore, a suit for breach of contract alleging a breach of the agreement of sale between the parties is a proper action.

The remedy requested for the breach of contract was the missed payments while Defendants were in possession of the property, and the unpaid real estate taxes. The payments due were $1,656.91[3] from February 17, 2013 to the date of hearing on January 27, 2015, and now February 17, 2015 as well. This is 24 monthly payments at $1,656.91 for a total of $39,765.84. In addition, the Defendants owe Plaintiff for unpaid real estate taxes as follows:

$8,529.28 for 2012 (paid by Plaintiff);

$7,764.06 for 2013 (unpaid);

$ 988.24 for 2014 County and Township (unpaid);

$6,418.81 for 2014 school (unpaid);

TOTAL: $23,700.39

The total owing for unpaid payments and taxes under the Agreement of Sale is $63,466.23. We note there was no evidence of cost of insurance to the Plaintiff due to any cancellation of or lack of insurance on the motel property by the Defendants. Therefore, we find the amount of damages for breach of the agreement of sale is $63,466.23.

The Defendants next claim they were fraudulently induced to enter into the Agreement of Sale due to misrepresentations made by the Decedent. To prove a claim of fraudulent misrepresentation, a party must show 1) a representation, 2) which is material to the transaction, 3) made falsely, with knowledge of the falsity or recklessness as to whether it is true or false, 4) with the intent of

---

3. This was the negotiated reduction of payment from the original agreed payment amount of $2,322.17, together with a late payment penalty.

misleading another into relying on it, 5) justifiable reliance on the misrepresentation, and 6) the injury suffered was proximately caused by the reliance. *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555 (1999); *Blumenstock v. Gibson*, 2002 Pa. Super. 339, 811 A.3d 1029 (Pa. Super. 2002).

Defendants alleged the Decedent misrepresented the value of the motel property and the annual income generated by the motel business. The Defendants stated they relied on the Decedent's representation that Decedent obtained an appraisal to the property that supported the purchase price. There was no evidence presented as to the amount of the alleged appraisal. There was no evidence presented that the property and business thereon were not worth what was represented to the Defendants or what they ultimately agreed to pay the Decedent. The Defendants negotiated a reduction in the monthly payments due to difficult economic circumstances, but they did not seek a reduction in the purchase price at that time, nor did they object to the purchase price as being unfair, until this suit was filed.

There also was no evidence presented that the gross annual income was misrepresented. The Defendants failed to produce any evidence of the income and expenses that were represented to them by the Decedent. Defendants provided a hand-written log (Defendants' Exh. 4) of the alleged income and expenses while they owned the property, but no other records. The Defendants also admitted to a reduced income due to storm damage incurred in November 2012 that kept seven (7) rooms from being used. The Defendants also testified that other rooms were damaged by a broken water pipe. These circumstances could be the reason for low figures in 2012,

2013 and 2014. Therefore, we find the Defendants were not convincing in their assertion that the income and expenses were misrepresented to them prior to purchase.

We also note that the Defendants did nothing to investigate the income and expenses. The Defendant's son was actively involved in negotiating the terms of the purchase. The Defendant's son previously purchased a gas station business. The Defendants do not appear to be so naive as to not understand the bargain of their Agreement. It is not plausible that the Defendants were duped or relied on misrepresentation. The Defendants may have made a business deal that turned out poorly for them, but there is no evidence that they were fraudulently induced to do so.

The final claim of the Plaintiff was an action in replevin to obtain the insurance proceeds check paid for the damage to the motel units. The sole issue in replevin is one of title and right to possession. 42 Pa. C.S.A. §323. The parties' interests in insurance proceeds are determined by what insurable interests the parties had in the real estate on the date of loss. *See Gerhard v. Welker*, 40 D & C 4th 557 (Comm. Pl. 1997). Whether or not the Plaintiff had a right to possession of the insurance proceeds check retained by the Defendants is dependent upon what interest the Plaintiff had in the motel property at the time of the loss.

Here, Plaintiff held legal title to the real property at the date of loss, subject to Defendants' equitable interest pursuant to the Agreement of Sale. That Agreement of Sale had a Risk of Loss clause requiring the Buyer (Defendants) to obtain insurance coverage and name Seller (Plaintiff) as an additional insured. The funds from the insurance, being $23,873.32 were for a loss due to damage to the motel

units in November 2012. At the time, the Plaintiff had an interest as titled owner to the real property. Furthermore, the Plaintiff held an insurable interest as set forth in the Agreement of Sale. As such, the Seller had a controlling interest in the insurance proceeds. The Plaintiff could expect that the funds go toward repairing the premises or to seller on account of monies owed under the Agreement of Sale, which were set forth in the Note. Upon default by the Defendants under the Agreement of Sale, the Plaintiff, as owner of the real property, could eject Defendants from the property. We find the Plaintiff, as titled owner of the real property, with an insurable interest, had the interest in the real property, under all of the resulting circumstances, to show entitlement to the insurance proceeds. As the Defendants have retained the check for the insurance proceeds, we will order that the action in replevin be granted, and Defendants shall sign and deliver said check to the Plaintiff, as owner of the real property.

We do not find support for the Defendants' Counter-Claim based upon the record. Therefore, the Counter-Claim will be dismissed.

## DECREE

AND NOW, this 4th day of March, 2015, following a Hearing/Non-Jury Trial held January 27, 2015, it is ORDERED and DECREED as follows:

1. Plaintiff's claim for ejectment is GRANTED and Defendants shall have thirty (30) days to vacate the real property known as 213 Emerson Road, Old Route 115, Ross Township, Monroe County, Pennsylvania known as the Gateway Motel and related premises;

2. This Court finds in favor of Plaintiff and against Defendants for breach of contract in the amount of $63,466.23;

3. The Plaintiff's claim in Replevin is GRANTED and the Defendants shall endorse and deliver the insurance proceeds check from Brethren Mutual Insurance in the amount of $23,873.32 within thirty (30) days.

4. Defendants' Counter-Claim is DISMISSED.