IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jon A. Galante,                          :
                    Appellant            :
                                         :
        v.                               :   No. 1023 C.D. 2019
                                         :   SUBMITTED: January 24, 2020
Moniteau School District                 :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER
                                         FILED: February 28, 2020


        Appellant Jon A. Galante (Galante) appeals from the Court of Common Pleas
of Butler County's (Trial Court) order, filed on June 28, 2019, granting Appellee
Moniteau School District's (School District) Motion for Summary Judgment. We
affirm.

**Facts and Procedural History**

        In August 2011, the School District hired Galante as an assistant coach for
Moniteau High School's boys varsity basketball team (Varsity Team). Reproduced
Record (R.R.) at 12.[1] Per the School District's salary schedule for the 2011-12 school

---

[1] Galante had previously been hired for the same position during the 2010-11 season.
Supplemental Reproduced Record (S.R.R.) at 12B. In addition, Galante occasionally worked at
Moniteau High School as a substitute teacher in 2010 and 2011. *Id.*

year, the salary for this position was $3,587. *Id.* at 13; *see* Am. Compl., ¶4.[2]

Additionally, the School District's regulations at that time provided that

> [c]oaches whose regularly scheduled season is extended by play-off completion [sic] will be reimbursed on [sic] a weekly rate [calculated] by dividing the season salary by the number of weeks in the regular schedule. The regular schedule will be defined as the first day of official practice to the last regular official competition of the season.

R.R. at 14, ¶6.

On February 15, 2012, the Varsity Team played its final regular season game. Am. Compl., ¶4. That evening, Galante coached Moniteau High School's boys junior varsity basketball team[3] during its game against Allegheny Clarion Valley. S.R.R. at 31B-32B. Galante was ejected from this game after repeated altercations with James M. Deemer, the referee. *Id.* According to Mr. Deemer,

> [a]t the buzzer [signaling] the end of the first quarter[,] a shot was taken after the horn, [but this shot was waived off] by my partner Chip Osborn[;] there was contact[,] but Mr. Osborn [did not call a foul]. The Coach of Moniteau [High School,] Mr. Galant[e, c]harged onto the floor [and] crossed the center court line while yelling at my partner in disagreement with the call. I stepped in and called a technical foul for [Galante's] actions on the court. We administered 2 free throws. [Galante] remained seated the rest of the game but his verbal abuse did not stop. At [a]bout the 2 minute mark[,] I gave him another warning about his actions and comments. With 4:30 left in the 4th

---

[2] The employment contract between Galante and the School District does not state his salary; rather, it merely reads, in relevant part, that "Galante . . . agrees to perform the duties of Asst. Varsity Boys Basketball coach in return for a salary as per the negotiated contract and payable upon completion of said assignment or activity, or as otherwise provided." R.R. at 12. Galante, however, admits that this was the agreed-upon amount of compensation for his regular season duties. Am. Compl., ¶4.

[3] It is not clear why Galante was coaching the junior varsity team, as there is nothing in the record indicating that the School District had hired him for that position. We need not solve this mystery, however, as the answer would have no bearing on the issues currently before us.

period[,] a Moniteau [High School] player ran over an [Allegheny Clarion] Valley player in an obvious player control foul. After I made my initial preliminary mechanics [sic] the player cursed at me, at which time I gave him a technical foul. When I reported this to the [scorer's] table[,] I was informed that the offending player had now fouled out. I told [Galante] his player was done and had to be replaced, at which time he yelled an obscenity at me[,] so I immediately gave him his second technical of the game [and] eject[ed] him from the contest. [Galante] went out of control and violently charged at me at the table, making contact with me and unleashed an expletive[-]laced tirade[,] spitting and swearing at me challenging me to a physical confrontation that lasted at least 15 seconds to 20 seconds until he could be restrained. While still at the table he made a second attempt to . . . berate me at which time security ushered him into the locker room. After the free throws were administered, [Galante] made a third attempt to come at me [after he] exit[ed] the locker room, but he was stopped by the varsity coach. I would also like to note that the scorekeeper and time clock operator all felt threatened by the violent behavior of [Galante]. This violent[,] profanity[-]laced outburst of verbal and physical abuse was witnessed by the entire crowd of men[,] women[,] and children.

*Id.*

The following day, February 16, 2012, Galante was escorted out of basketball practice at Moniteau High School by Assistant Principal Brenda Knoll and School District Superintendent George Svolos. Am. Compl., ¶6. Assistant Principal Knoll and Superintendent Svolos then informed Galante that "he was fired immediately." *Id.*, ¶7. On February 23, 2012, the Varsity Team lost its opening round playoff game to Smethport, which ended its season. *Id.*, ¶4.[4] On March 5, 2012, the School District

---

[4] *See Moniteau 2011-12 Basketball Schedule*, MAXPREPS, https://www.maxpreps.com/high-schools/moniteau-warriors-(west-sunbury,pa)/basketball-winter-11-12/schedule.htm (last visited February 18, 2020).

sent Galante a check for $2,605.70, his net pay after federal, state, and local deductions had been made from his gross pay of $3,587. R.R. at 10-11.

On February 16, 2016,[5] Galante filed suit against the School District in Butler County Magisterial District Court. The Honorable Lewis E. Stoughton dismissed Galante's suit on March 31, 2016, whereupon Galante appealed the matter to the Trial Court on April 29, 2016. Notice of Appeal from Magisterial District Judge Judgment at 1-2. Galante filed his Complaint on June 6, 2016. The School District filed preliminary objections on June 26, 2016, which the Trial Court sustained in full on August 31, 2016. The Trial Court dismissed Galante's Complaint, but gave him 20 days to file an Amended Complaint. Trial. Ct. Or., 8/31/16, at 1.

Galante complied with the Trial Court's order by filing his Amended Complaint on September 20, 2016. This Amended Complaint contained seven counts sounding in breach of contract, conversion, due process violations, loss of reputation, unjust enrichment, and wrongful termination. Am. Compl., ¶¶16-45. On October 11, 2016, the School District filed preliminary objections to Galante's Amended Complaint. The Trial Court held oral argument regarding these preliminary objections on December 1, 2016. In an order issued the following day, the Trial Court "conclude[d] that the only claim with sufficient merit to move forward for further consideration in [p]reliminary [o]bjections is the breach of contract count" and that Galante had "conceded the insufficiency of the other counts [in his Amended Complaint.]" Trial Ct. Or., 12/2/16, at 1.[6] In his breach of contract count, Galante asserted that the School District owed him "over $900 [including

---

[5] The statute of limitations for breach of contract claims is four years. 42 Pa. C.S § 5525. As Galante was fired on February 16, 2012, he thus filed suit on the last day prior to the statute of limitations running on this cause of action.

[6] The record does not include a transcript of the December 1, 2016 argument.

4

interest]" for "[2] weeks of pay, based upon the [c]ontract, that [the School District] withheld and never paid Galante after [Superintendent] Svolos unilaterally fired Galante." Am. Compl., ¶¶29-30. On December 5, 2016, the Trial Court issued another order, in which it overruled the School District's preliminary objections to Galante's breach of contract claim, but otherwise sustained the preliminary objections and dismissed the rest of Galante's claims with prejudice. Trial Ct. Or., 12/5/16, at 1.

On March 29, 2019, the School District filed its Motion for Summary Judgment.[7] In this Motion, the School District argued that it was entitled to judgment as a matter of law on Galante's breach of contract claim, as Galante was fired prior to the February 23, 2012 playoff game against Smethport and was not guaranteed postseason pay as a matter of right through the contract's terms. Mot. for Summ. J., ¶¶7-15. The Trial Court granted the School District's Motion via an order filed on June 28, 2019, which prompted Galante to file this appeal with our Court.

**Issues on Appeal**

Galante raises a number of arguments for our consideration, which can be restated and summarized as two assertions. First, the Trial Court erred by granting summary judgment in the School District's favor on the breach of contract claim, as there are genuine issues of material fact regarding whether Galante was entitled to postseason pay for the Varsity Team's 2011-12 season. Galante's Br. at 11-16. Second, Galante's allegedly "unilateral[]" firing by Superintendent Svolos violated the terms of the contract, which, according to Galante, mandated that Galante could

---

[7] No explanation has been given for why so much time passed between when the Trial Court ruled upon the School District's preliminary objections and when the School District filed this Motion for Summary Judgment. We note, however, that this case was reassigned on October 19, 2018, from the Honorable Marilyn J. Horan to the Honorable S. Michael Yeager, after Judge Horan was appointed to the federal bench. *See* Admin. Or. of Ct., 10/19/18, at 1.

5

only be fired by a majority vote of the School District's Board of Directors. *Id.* at 12.

## Discussion

When ruling upon a motion for summary judgment, the trial court must resolve all doubts against the movant, examining the record in the light most favorable to the non-moving party, and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). Our review of an order granting summary judgment is limited to determining whether the trial court's decision constituted an abuse of discretion or an error of law. *Salerno v. LaBarr*, 632 A.2d 1002, 1003 (Pa. Cmwlth. 1993).

It is axiomatic that a plaintiff cannot obtain a result in their favor on a breach of contract claim unless they can satisfy their burden of proof on three self-explanatory points: "there was a contract, the defendant breached it, and [the] plaintiff[] suffered damages from the breach." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). As for contractual interpretation,

> [t]he fundamental rule . . . is to ascertain and give effect to the intent of the contracting parties. *Felte v. White*, . . . 302 A.2d 347, 351 ([Pa.] 1973). The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. *Steuart v. McChesney*, . . . 444 A.2d 659, 661 ([Pa.] 1982). The whole instrument must be taken together in arriving at contractual intent. *Felte*, 302 A.2d at 351. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. *Steuart*, 444 A.2d at 662. "'When a writing is clear and unequivocal, its meaning must be determined by its contents alone.'" *Felte*, 302 A.2d at 351 (quoting *East Crossroads Center Inc. v. Mellon Stuart Co.*, . . . 205 A.2d 865, 866 ([Pa.] 1965)).

6

> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. *Hutchison v. Sunbeam Coal Co., . . .* 519 A.2d 385, 390 ([Pa.] 1986). A contract contains an ambiguity "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* This question, however, is not resolved in a vacuum. Instead, "contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr[]. Co. v. Harleysville Mut. Ins. Co., . . .* 735 A.2d 100, 106 (Pa. 1999). In the absence of an ambiguity, the plain meaning of the agreement will be enforced. *Gene & Harvey Builders, Inc. v. Pennsylvania Mfrs.' Ass'n Ins. Co., . . .* 517 A.2d 910, 913 ([Pa.] 1986). The meaning of an unambiguous written instrument presents a question of law for resolution by the court. *Community College v. Community College, Society of the Faculty, . . .* 375 A.2d 1267, 1275 ([Pa.] 1977).

*Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 429-30 (Pa. 2001).

While the at-issue contract itself did not specify Galante's precise salary for the 2011-12 season, as already noted, this gap is filled by the School District's aforementioned salary schedule and regulations. Construing these documents together, there can be no dispute that, *had he remained employed for the entire season*, Galante would have been entitled to $3,587, plus a proportionate amount for each week that the Varsity Team had a playoff game.

However, it is equally true that these documents' terms *do not limit* the School District's ability to fire Galante or guarantee Galante's salary even in the event of his termination. In fact, these documents say *nothing whatsoever* about a protocol for terminating Galante's employment and do not imbue Galante with any specific termination-related rights.[8] Given that Galante himself admits he was fired on

---

[8] Galante never claimed through the breach of contract count in his Amended Complaint that he had any special protections, whether civil service, union, or otherwise, outside of what was

7

February 16, 2012, and therefore was not the Varsity Team's assistant coach after that date, the School District was under no contractual obligation to pay him for the Varsity Team's subsequent playoff game, which he did not work. Furthermore, Galante offered nothing other than pure conjecture to support his allegation that Superintendent Svolos fired him without the School District's assent.[9] The way in which Galante was terminated thus did not violate his employment contract with the School District.

## Conclusion

Accordingly, we affirm the Trial Court's order, filed on June 28, 2019, which granted the School District's Motion for Summary Judgment. We do so because there is no genuine issue of material fact supporting Galante's claim that the School District committed a breach of contract, either through the process of firing Galante or by failing to pay Galante for the Varsity Team's period of postseason play, which occurred after Galante had been terminated.



ELLEN CEISLER, Judge

---

supposedly promised to him in his contract. Thus, the question before this Court is limited to addressing what is in the contract itself. Galante believes he is entitled to $387.50 plus interest, because that was what the contract itself allegedly promised him per playoff game. The only process-related argument pertaining to breach of contract that Galante makes is that he could only be fired by a majority vote of the School Board. However, as indicated earlier, there is nothing in the contract pertaining to Galante's bald assertion.

[9] Galante appears to have ignored the fact that Superintendent Svolos was the individual who signed the contract *which is the subject of this appeal* on behalf of the School District. *See* R.R. at 12. Given that Superintendent Svolos was directly involved with Galante's hiring, it is unsurprising that he would also play an active role in Galante's firing.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jon A. Galante,                           :
                    Appellant            :
                                          :
        v.                               :   No. 1023 C.D. 2019
                                          :
Moniteau School District                 :

# **O R D E R**

AND NOW, this 28th day of February, 2020, the Court of Common Pleas of Butler County's order, filed on June 28, 2019, which granted Appellee Moniteau School District's Motion for Summary Judgment regarding Appellant Jon A. Galante's breach of contract claim, is AFFIRMED.

_____
ELLEN CEISLER, Judge