### Robert F. Felte, Inc. v. White (et al., Appellant).

Argued November 9, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

reargument refused April 18, 1973.

*Ronald N. Rutenberg,* with him *Rutenberg, Rutenberg, Rutenberg and Rutenberg,* for appellant.

*Donald A. Semisch,* with him *Semisch and DerMovsesian,* for appellees.

Opinion by Mr. Justice Roberts, March 16, 1973:

This controversy arises out of a written contract of sale for a parcel of realty located in Abington, Pennsylvania, between Frank and Minerva White (sellers) and Global Franchise Corporation (buyer). Appellant, Global, is appealing from the decree of the Court of Common Pleas of Montgomery County, awarding $9,000, less counsel fees and costs, to appellees, Frank and Minerva White. The $9,000 represents the funds deposited with Robert F. Felte, Inc., an escrow agent, who originated this action by a complaint in equity*

---

* As the chancellor correctly noted, this is not an equity action, because the parties were merely requesting a money judgment. However, neither appellant nor appellee objected to this proceeding remaining in equity rather than being certified to the law side of the court. Under Pa. R. C. P. 1509(c) the equity court is authorized

requesting interpleader to determine whether the buyer or seller is entitled to the escrow. On this appeal appellant-buyer contends that the chancellor erred in awarding this sum to the sellers. Upon careful review of the record we agree with appellant and accordingly reverse.

A brief recital of the facts, as found by the chancellor, leading to the interpleader action is necessary to understand the principal issue. On November 29, 1969, the Whites and Global entered into a written agreement of sale for the purchase of property owned by the Whites. The purchase price was $90,000 with a down payment of $9,000 to be paid into an escrow account. Robert F. Felte, Inc., the agent for the sellers, was designated by both parties to be the escrow agent.

The contract of sale contained several conditions relevant to the resolution of this dispute:

"(a) that settlement was to be made on February 15, 1970; that payment in accordance with the contract should be made on that date; and, that time was of the essence;

"(b) that if the buyer defaulted in performing the conditions of the contract or failed to make settlement in accordance with the terms thereof, the sellers had the option of retaining the sum paid into escrow, on account of the purchase price, or of retaining it as liquidated damages for the damages and expenses to which the sellers would be put; and, in the case of the latter, the contract should be null and void;

"(c) that if the mortgage commitment were not obtained by the date of settlement, such date would be extended after said commitment was obtained;

"(d) in the event the agreement were contingent upon securing a mortgage by or for the buyer (as was

to decide the case although only legal issues are involved, unless an objection is raised by preliminary objection.

the case), said mortgage was to be obtained within 90 days from date of owners' approval: in the event said mortgage was not obtained within the specified time limit, then sellers, at their option, might cancel said agreement of sale, and all deposit monies paid on account of the purchase price would be refunded in full;

"(e) that the buyer make reasonable and diligent efforts to obtain the mortgage financing for the amount of $175,000 for the purchase of the property and the construction of the building thereon, from a regional financial institute customarily making such loans; and, that if buyer were unable to obtain such financing after such efforts, that it should submit written notification thereof to sellers, resulting in the agreement becoming null and void; and, buyer should immediately receive the return of its deposit, upon demand, and without interest."

Prior to the settlement date of February 15, 1970, both parties signed an "Endorsement to the Agreement of Sale" which provided: "Settlement to be changed from February 15, 1970, to April 15, 1970, plus 30 days if necessary, to assure enough time for proper zoning if needed." In a letter to Felte dated April 27, 1970, the buyer, Global, indicated that settlement would occur on or about May 5, 1970. In anticipation of settlement and start of construction on the property, the Whites and their tenants vacated the premises in the first week of May, 1970.

On May 15, 1970, all parties met for settlement, but Global's agent, Mr. Hertz, indicated that while all the financing arrangements had been made they still needed about ten more days to complete the paper work. Hertz told the parties that "It [the financing] was in the bag." At this meeting the parties executed a second extension agreement. The relevant part of this agreement provides: "The parties agree that settlement is ex-

tended to on or before May 25, 1970, 9:00 a.m. In the event settlement is not consummated at that time, the parties agree to a further extension of settlement to on or before June 5, 1970. If such further extension is required, Buyer shall pay retroactive to this date the sum of $15.00 per day, until the date of settlement. Such payment shall cease on the day Buyer is ready, willing and able to make settlement, whether or not settlement is consummated."

Shortly thereafter Global did receive a verbal commitment from a mortgage lending institution in the amount of $200,000. The chancellor also found that during this period Global had been in touch with eight mortgage bankers and had made a good faith effort to secure financing.

On June 3, 1970, another meeting was held at which Global requested a third delay. The reason given for this delay was that Global had acquired another parcel of real estate and had obtained mortgage financing for a package deal which included the White's property, and that only the paper work needed to be completed on this matter. Subsequently, on that same date the parties signed the following agreement, the focus of this litigation:

"WHEREAS, Buyer desires to extend the date of settlement as originally set in their agreement of November 29, 1969, and extended on May 15, 1970;

"Now, THEREFORE, intending to be legally bound hereby, it is agreed as follows:

"1. Settlement shall be made on or before July 10, 1970, and time is of the essence.

"2. Buyer shall pay to Sellers, within five days, the sum of $950.00 as compensation for said extension."

On June 14, 1970, Central Mortgage Company of New Jersey confirmed receipt of Global's application for financing, but on July 8, 1970, Central Mortgage

Company rejected Global's application because Central was unable to secure construction and permanent financing. The next day, July 9, 1970, Global requested that Felte return the $9,000 down payment.

Pursuant to these findings of fact the chancellor concluded that:

(1) Global made a reasonable and diligent effort to obtain mortgage financing as required by the agreement;

(2) The liquidated damages provision of the agreement was proper;

(3) The extension agreement of June 3, 1970, to the original contract abrogated the condition of the agreement of sale that if Global were unable to procure the mortgage financing, the contract should become void, and Global should be entitled to the return of the $9,-000 down payment, and therefore;

(4) Global's failure to consummate settlement on July 10, 1970, was a breach of the agreement which entitled the Whites to retain the $9,000 escrow less counsel fees and costs.

Appellant contends that the financing contingency in the original agreement of November 29, 1969, entitles it to the return of the escrow deposit, and that it at no time agreed to alter or waive that condition. The chancellor construed the provision in the June 3 extension agreement that "settlement shall be made on or before July 10, 1970, and time is of the essence," as abrogating the mortgage financing condition of the original agreement. The court reasoned that because Global had, prior to the extension agreement, assured the Whites that Global had secured the mortgage financing it therefore waived that financing condition.

In reaching this conclusion the chancellor stated:

"The only thing that remained to be done before the Whites received the remainder of the purchase price

under the contract was some paper work and actual settlement. Therefore, the intention of the parties in entering into the June 3, 1970, extension agreement must be interpreted in the light of these surrounding circumstances. The intention of the parties, when they signed the June 3 agreement which stated that 'settlement shall be made on or before July 10, 1970' and 'time is of the essence' is held to be as follows: (1) that the condition requiring the procurement of mortgage financing had been accomplished; (2) that inasmuch as the condition had been met, this extension agreement vitiated the conditional nature of the contract of November 29, 1969; (3) that the only thing that remained for the complete performance of this contract was some necessary paper work (month and seven days, i.e., from June 3 to July 10); and (4) that final settlement should be made on or before July 10, 1970.

"Inasmuch as Global failed to perform as required by the contract, it has breached the contract; and, the Whites are entitled to retain the down payment as liquidated damages."

We are unable to agree with the chancellor's interpretation of the effect of the June 3 extension agreement, and therefore reverse.

When interpreting a contract the intention of the parties must be determined, and in ascertaining that intention effect must be given to all the provisions of the contract. *Sykes v. Nationwide Mutual Ins. Co.*, 413 Pa. 640, 198 A. 2d 844 (1964); *Breen v. Rhode Island Ins. Co.*, 352 Pa. 217, 42 A. 2d 556 (1945). In a written contract the intent of the parties is the writing itself and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement. *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A. 2d 865 (1965); *Siciliano v. Misler*, 399 Pa. 406, 160 A. 2d 422 (1960);

*Kennedy v. Erkman,* 389 Pa. 651, 133 A. 2d 550 (1957) ; *Atlantic Refining Co. v. Wyoming Nat'l Bank of Wilkes-Barre,* 356 Pa. 226, 51 A. 2d 719 (1947) ; *Commonwealth v. Nelson-Pedley Const. Co.,* 303 Pa. 174, 154 A. 383 (1931). "When a written contract is clear and unequivocal its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence." *East Crossroads Center, Inc. v. Mellon-Stuart Co.,* supra at 230-31, 205 A. 2d at 866. Furthermore, this Court long ago emphasized that "[t]he parties have the right to make their own contract and it is not the function of this Court to rewrite it, or give it a construction in conflict with the accepted and plain meaning of the language used." *Hagarty v. William Akers, Jr. Co.,* 342 Pa. 236, 20 A. 2d 317 (1941).

The "plain meaning" and the intention of the Extension Agreement of June 3, 1970, was simply to delay the date for settlement, already extended, to "on or before July 10, 1970." This language is express and clear on its face and is thus not subject to interpretation by reference to any circumstances other than those recited in the written agreement itself. See *East Crossroads Center, Inc. v. Mellon-Stuart Co.,* supra; *Siciliano v. Misler,* supra. There is no ambiguity in this extension agreement, nor is there any clause providing that the buyer would forfeit its $9,000 deposit if it failed to make settlement on or before July 10, 1970. The waiver of such a contractual right—the return of the escrow deposit—must be a clear, unequivocal, and decisive act of the party. See *Gaffney v. Unit Crane & Shovel Corp.,* 117 F. Supp. 490 (E.D. Pa. 1953) ; *Brown v. Pittsburgh,* 409 Pa. 357, 186 A. 2d 399 (1962). Thus that condition—the requirement of mortgage fi-

nancing—in the original contract was clearly still in effect. Such an important condition in a written agreement of sale must be given effect unless altered by the parties or specifically waived by the party in whose favor that condition runs in the agreement. We find nothing in the language of the extension agreement of June 3, 1970, which vitiates the conditional nature of the contract of November 29, 1969.

It is to be noted that both prior extension agreements contained language almost identical to the language in the third extension agreement. Neither of the first two agreements constituted a waiver of the financing condition, nor does the language of the third extension writing permit the conclusion that such a waiver has occurred. Moreover, in examining the entire extension agreement, see *Sykes v. Nationwide Mutual Ins. Co.,* supra; *Breen v. Rhode Island Ins. Co.,* supra, it is evident that there is specific consideration for the third extension agreement—Global's obligation to pay $950.00 to the sellers. This was the stated consideration for the further extension. In the absence of a specific contractual alteration or waiver of the conditional provision of the original agreement, that financing provision remains valid and must be given full effect. If the sellers were bargaining for any additional alteration, such as the abrogation of the financing condition, in return for this further extension, that too, as the payment of the $950.00, would have been expressly included in the written agreement.

Appellees contend that not only was the court correct in its interpretation of the extension agreement, but that appellant-buyer is estopped from asserting that the mortgage financing was not obtained because of its prior indications that the financing had been secured. However, appellees raise this issue here for the first time, and this Court has time and again held that we

146

will not review questions that were neither raised, tried, or considered in the trial Court. *Heppe Estate,* 440 Pa. 328, 269 A. 2d 687 (1970) ; *Man O'War Racing Ass'n, Inc. v. State Horse Racing Commission,* 433 Pa. 432, 250 A. 2d 172 (1969) ; *Brenner v. Sukenik,* 410 Pa. 324, 189 A. 2d 246 (1963) ; *Clark v. Rutecki,* 408 Pa. 25, 182 A. 2d 687 (1962) ; *Bechler v. Oliva,* 400 Pa. 299, 161 A. 2d 156 (1960) ; *Rosenfeld v. Rosenfeld,* 390 Pa. 39, 133 A. 2d 829 (1957). Moreover, appellees are also barred from raising this equitable estoppel contention here because they failed to plead estoppel as an affirmative defense as required by Pa. R. C. P. 1030.

"All affirmative defenses, including but not limited to the defenses of . . . estoppel . . . shall be pleaded in a responsive pleading under the heading of 'New Matter'." See also Pa. R. C. P. 1501; 1509(b) ; Goodrich-Amram, Standard Pennsylvania Practice §1030-1.3 (1962). Cf. *Brenner v. Sukenik,* supra.

Therefore under the express terms of the contract appellant is entitled to the refund of its $9,000 deposit less counsel fees and costs.

Decree reversed. Each party to pay own costs.

Mr. Justice NIX dissents.