**Megonegal v. Megonegal**

R. *Stuart Jenkins*, for plaintiff.
*Joseph L. Higgins* and *Mathew J. Ryan*, for defendant.

deFURIA, *J.*, December 10, 1979—Plaintiff and defendant were married on October 28, 1944, and subsequently were divorced in February, 1974. On March 26, 1973, plaintiff and defendant entered into a property settlement agreement. Subparagraph 7 of the paragraph entitled "Settlement" of the agreement provided that defendant would pay $627 per month to plaintiff and further, that in the event that the husband's salary increased or decreased, defendant would pay 26.9 percent of his gross income, which would be determined by his income tax returns.

A dispute has arisen between plaintiff and defendant as the result of defendant's refusal to deliver his income tax returns from the years 1973 through 1978.

On January 23, 1979, plaintiff filed a complaint in equity seeking a decree directing defendant to produce income tax returns for the years 1973 through 1978, and for damages.

Defendant has filed an answer and new matter. Plaintiff has filed a reply. A hearing was held on October 1, 1979.

## ISSUES

1. Does the agreement require defendant to provide plaintiff with his Pennsylvania and Federal income tax returns for the years 1973 through 1978, and if so,

2. Does the agreement entitle plaintiff to 26.9 percent of defendant's salary or wages alone, or 26.9 percent of defendant's total income from any taxable source as shown on his Pennsylvania or Federal income tax returns?

After a review of the record, the court makes the following:

## FINDINGS OF FACT

1. Plaintiff, Ruth C. Megonegal, is an adult individual residing at 464 Granite Terrace, Springfield, Pa.

2. Defendant, Edwin Russell Megonegal, Jr., is an adult individual residing at 168 Grandview Avenue, Springfield, Pa.

3. Plaintiff and defendant were married on October 28, 1944.

4. Plaintiff and defendant were divorced in the month of February, 1974.

5. Plaintiff and defendant entered into a property settlement on or about March 26, 1973.

6. Both plaintiff and defendant were represented by legal counsel during the negotiation and preparation of the aforesaid property settlement agreement.

7. Under subparagraph 7 of the portion of the agreement entitled "Settlement," the parties agreed to the following: "(7) Husband agrees that he will pay wife the sum of $627 per month until her death or remarriage, whichever shall first occur. It

is understood and agreed that said monthly payments shall increase or decrease proportionately to an increase or decrease in Husband's gross income so that the monthly payment shall equal 26.9% of Husband's gross income. Any such increase or decrease shall be established by Husband's Income Tax Return. The increase or decrease in monthly payments shall take effect with the first payment following the month in which there is a change in Husband's gross income."

8. Final negotiations between counsel determined that the initial amount of support commencing in the year 1973, referred to in subparagraph 7 of the Property Settlement Agreement section entitled "Settlement," were conditioned upon the presentation to plaintiff of defendant's W-2 forms for the year 1972.

9. Defendant and plaintiff filed joint state and Federal income tax returns for the tax year of 1973.

10. Defendant paid plaintiff the sum of $150 per week from March 1973 to October 13, 1978.

11. On or about October 13, 1978, defendant without plaintiff's consent reduced weekly payments from $150 per week to $125 per week.

12. Plaintiff requested copies of tax returns for the tax years 1973, 1974, 1975, 1976 and 1977.

13. Defendant has refused to supply the requested income tax returns contending in new matter, inter alia, that the agreement does not require the submission of such returns, and that it was understood by the parties to require the submission of W-2 forms which report his wages and salaries for a given tax year.

14. In the alternative, defendant has contended in new matter that since February of 1974, defendant has twice remarried and has filed joint state

and Federal tax returns with each of his successive wives and that he has no authorization from his respective spouses to release gross income amounts reported in joint income tax returns filed for the tax years 1974 through 1978 due to his spouses, right of privacy.

15. Defendant's second wife, Ellen H. Megonegal died on July 15, 1975, and filed joint returns with defendant for the tax years 1974 and 1975.

16. Defendant's third wife, Lillian N. Megonegal is living and filed joint returns with defendant for the tax years 1976, 1977 and 1978.

17. Ellen H. Megonegal is not represented by counsel and has not, through her executor or other representative of her estate, sought to intervene or become a party to these proceedings.

18. Lillian N. Megonegal is not represented by counsel, and has not sought to intervene or become a party to these proceedings.

## DISCUSSION

A. Defendant lacks standing to raise the alleged right of privacy on behalf of Ellen H. and Lillian N. Megonegal in their respective joint income tax returns

Plaintiff claims he has no authority from his current wife, Lillian N. Megonegal, to release copies of joint income tax returns. This court recognizes that defendant and Lillian N. Megonegal are two separate adult individuals with respective rights to privacy. It is not necessary for us to make any determination as to whether Ellen H. Megonegal has a right of privacy which would be sufficient to prevent the release of gross income amounts stated in

joint income tax returns filed with defendant. This is true because Lillian N. Megonegal is not a party to the instant lawsuit. Whatever right to privacy Lillian N. Megonegal may have to information contained in joint income tax returns filed for the tax years 1976, 1977 and 1978, belongs to Lillian N. Megonegal alone. Defendant, as a separate individual who is distinct from Lillian N. Megonegal, does not have standing to assert on Lillian N. Megonegal's behalf her individual right to privacy. We, therefore, rule that defendant cannot assert a right of privacy relative to information sought by plaintiff on behalf of Lillian N. Megonegal.

The difficulty with defendant's position in this regard, is re-emphasized when consideration is given defendant's attempt to assert a right of privacy on behalf of his second deceased wife, Ellen H. Megonegal. Ellen H. Megonegal has been dead since July 15, 1975. In the event that there is an estate for Ellen H. Megonegal, the interest of the estate by law must be protected by the estate's legal representative. The record does not disclose that defendant is the executor of Ellen H. Megonegal's estate. In addition, for the reason specified above, defendant is incapable of asserting the right to privacy which belongs to another individual.

The general rule is that a taxpayer can, at all times, disclose the contents of his own tax returns: U.S. ex rel. Cartham v. Sheriff, City of New York, 330 F. 2d. 100 (2d Cir. 1964). A joint return should not change the rule.

Therefore, defendant has no standing to assert a right of privacy on behalf of Ellen H. Megonegal.

B. The property settlement agreement requires defendant to pay a percentage of his gross income as determined by his income tax returns

1. Subparagraph 7 of the agreement provides that the amount of monthly support payments shall be determined by a percentage of defendant's gross income reported in his income tax returns.

2. Thus, the property settlement agreement provides that defendant shall provide plaintiff with defendant's income tax returns.

3. Defendant contends that the term "income tax return" means defendant's W-2 form rather than his state or Federal income tax return. This court finds that the language of subparagraph 7 in the agreement, supra, is clear and unambiguous. Therefore, we find that both parties agreed that the income tax returns would be used to determine defendant's "gross income" rather than by the use of defendant's W-2 form for a given tax year.

It is axiomatic that W-2 forms do not disclose all sources of income which are considered to be taxable under either state or Federal income tax laws. Such forms simply disclose earnings from an employer. Since subparagraph 7 of the agreement, supra, requires that monthly support will be based upon "gross income" rather than salaries earned by defendant, it is impossible to conclude that the parties originally intended subparagraph 7 of the agreement to mean that "gross income" would be measured by W-2 forms instead of income tax forms. The plain meaning of subparagraph 7 of the agreement negates any inference of such an intent on the part of either party. "Gross" means total. Therefore, the total income must be considered. Similarly, "tax return" clearly means the Federal income tax return.

Thus, we conclude that the term "gross income" means income from any source to defendant which is taxable in a given tax year.

This court's interpretation of subparagraph 7 of the agreement, supra, is controlled by certain well-established rules of contract construction. The Pennsylvania Supreme Court has adopted the following principles: "'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles.'" Percy A. Brown & Co. v. Raub, 357 Pa. 271, 287, 54 A. 2d 35, 43 (1947).

Thus, when interpreting a contract the intention of the parties must be determined and in ascertaining that intention effect must be given to all of the provisions of the contract: Robert F. Felte, Inc. v. White, 451 Pa. 137, 302 A. 2d 347, 351 (1973).

The court in Felte, supra, further provided that when the words are clear and unambiguous, the intent is to be determined only from the express langauge of the agreement: Robert F. Felte, Inc. v. White, supra, p. 351; East Crossroads Center, Inc. v. Mellon-Stuart Company, 416 Pa. 229, 205 A. 2d 865 (1965).

A corollary to the rule is that: "'The parties [have] the right to make their own contract, and it is not the function of this Court to rewrite it, or to give it a construction in conflict with the accepted and plain meaning of the language used.'" Hagarty v. William Akers, Jr., Co., Inc., 342 Pa. 236, 239, 20 A. 2d 317, 319 (1941).

Thus, in East Crossroads Center, Inc. v. Mellon-Stuart Company, supra, the court provided: "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to

extrinsic aids or evidence." East Crossroads Center, Inc. v. Mellon-Stuart Company, supra, 416 Pa. 230-231, 205 A. 2d 866.

Our interpretation of the provisions of subparagraph 7, supra, is consistent with the application of the above principles of construction. Accordingly, we will not construe subparagraph 7 of the agreement to mean that defendant's "gross income" is limited to income shown on defendant's W-2 form.

## CONCLUSIONS OF LAW

Under the plain interpretation of the agreement freely entered into, plaintiff, while alive and unmarried, is entitled to 26.9 percent of defendant's gross income in any year.

Gross income includes income from any source which is taxable under Federal law.

The amount of gross income and the percentage thereof due plaintiff shall be determined from defendant's annual Federal annual income tax return, whether filed singly or jointly.

Plaintiff is entitled to a copy of defendant's Federal income tax returns for the years 1973, 1974, 1975, 1976, 1977 and 1978, and for each year in the future during which she is alive and unmarried.

Wherefore, we enter the following

## DECREE NISI

And now, December 10, 1979, it is hereby ordered 1. That Edwin Russell Megonegal, Jr., defendant, furnish Ruth C. Megonegal, plaintiff, with copies of defendant's Federal income tax returns for the tax years 1973, 1974, 1975, 1976, 1977 and 1978, and for any future years, if plaintiff is unmarried.

2. That defendant shall pay plaintiff 26.9 percent of his gross income from any source as disclosed in said Federal income tax returns for each year from 1973 to 1978, inclusive, and for any future year.

3. Defendant shall pay the costs.

The prothonotary is directed to enter this decree nisi and to give notice thereof to the parties or their counsel of record. If no exceptions are filed within 20 days, this decree nisi shall be entered by the prothonotary on praecipe, as the final decree.