J-A01036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| INDUSTRIAL REAL ESTATE MANAGEMENT, INC. D/B/A HANMAR ASSOCIATES, MLP AND MARK HANKIN | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | No. 1512 EDA 2023 |
| KEYSTONE GRANITE & TILE, INC. | : : : | |

Appeal from the Judgment Entered May 25, 2023
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2020-20518

BEFORE:   LAZARUS, P.J., PANELLA, P.J.E, and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 13, 2024**

Industrial Real Estate Management, Inc., d/b/a Hanmar Associates, MLP, and Mark Hankin (collectively, "Appellants") appeal from the judgment[1] entered in their favor following a confession of judgment against Appellee, Keystone Granite & Tile, Inc. After a thorough review of the record, we affirm.

As summarized by the lower court:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants purport to appeal from the March 15, 2023 order confessing judgment in their favor.  However, in a civil case, an appeal "can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions[.]" **Cozza v. Jekogian**, 297 A.3d 744, 744 n.1 (Pa. Super. 2023) (citation omitted). As judgment was entered on May 25, 2023, following the lower court's May 21, 2023 order granting in-part and denying in-part their post-trial motion, we have amended the caption accordingly.

This matter, born out of a relatively simple landlord/tenant dispute, has a protracted history. Appellants, as commercial lessor, leased to [Appellee], as commercial lessee, a warehouse unit in the Huntingdon Valley Industrial Center, located at 3995 Mann Road, Lower Moreland Township, Montgomery County[,] Pennsylvania. [Appellee's] tenancy was to last for an initial five … year term, commencing on March 1, 2013[,] and terminating on February 28, 2018 [("Lease")]. The Lease was knowingly and voluntarily entered into by both parties.

On October 27, 2016[,] [Appellee], pursuant to its obligations under Paragraph 25 of the Lease, provided [Appellants] with prior written notice of its intention to terminate the Lease at the end of the initial term on February 28, 2018. On or about February 28, 20[18,] [Appellee] vacated and relinquished physical possession of the demised premises to [Appellants]. Herein lies the genesis of the dispute between the parties.

**The Initial Landlord[/]Tenant Dispute**

Paragraph 27 of the Lease required that [Appellee] deliver the demised premises to [Appellants] in "good order condition that the premises were on the Lease Commencement Date." Paragraph 25(B) of the Lease required [Appellee] to deliver "an environmental study and written report concerning the Premises prepared by an environmental engineer mutually satisfactory to Lessor and Lessee[,]" the cost of which would be borne by [Appellee]. Failure to comply with any of these requirements would allow [Appellants] to consider the [L]ease automatically renewed despite [Appellee's] prior notice.

The parties disagreed as to the condition of the demised premises. [Appellants] sent [Appellee] a written default notice on February 27, 2018[,] notifying [Appellee] that it had not yet restored the premises per the Lease and that [Appellants] planned to exercise [their] option to treat [Appellee] as a holdover tenant. On March 1, 2018, [Appellant] concluded that [Appellee] had failed to honor the above lease provisions. [Appellants] subsequently billed [Appellee] for rent as a holdover tenant.

On September 26, 2018, [Appellee] filed a declaratory judgment action in the Montgomery County Court of Common Pleas, seeking return of a security deposit and a determination that the [L]ease had not been renewed. After preliminary

objections, the Montgomery County action was stayed to permit the parties to arbitrate their dispute pursuant to the terms of the Lease.

**Arbitrator's Findings**

At arbitration, [Appellants] submitted seven … proposed awards to which [Appellee] responded in kind. The [a]rbitrator found in favor of [Appellants] … for all of the disputed areas except [as to] [Appellants'] claim that it had properly exercised its option to treat the [L]ease as automatically renewed.

Central to this dispute, the arbitrator found that [Appellee] did not restore the demised premises as required by Paragraph 27 of the Lease and that [Appellee] is required to pay [Appellants] the costs necessary to restore the premises. Further, the arbitrator specifically found that "[t]he amount of damages, and the effect of that noncompliance of damages sustained or the ability to recover those damages in light of the fact that [Appellants] have re-leased the demised premises, has not been requested and therefore will not be addressed." …

On February 25, 2020, the arbitrator issued its findings of fact and conclusions of law. Ultimately, the arbitrator's award granted [Appellants] costs and legal fees through December 16, 2019, totaling $119,067 and found that [Appellee] was liable for restoration costs. The arbitrator did not award a specific amount of the restoration costs as no dollar amount was requested by [Appellants].

[Appellants] subsequently filed a petition pursuant to 42 Pa.[]C.S.[] § 7342, seeking to have the [a]rbitration [a]ward partially confirmed[] and partially vacated. On October 23, 2020, the Philadelphia Court of Common Pleas issued two … [o]rders … confirming awards #1 and #6[, which collectively established that Appellee failed to restore the premises and bore liability for the costs necessary for restoration,] as well as costs and legal fees totaling $119,067. …

Both parties filed cross-appeals in November[] 2020[] in the Superior Court of Pennsylvania challenging the trial court's rulings on the arbitration award. On February 18, 2022, [t]he Superior Court affirmed the Philadelphia [t]rial [c]ourt's rulings.

The finite portion of the [o]rder relating to the costs and legal fees of $119,067 was reduced to judgment on November 12, 2020[,] and transferred to Montgomery County in December of 2020. [That judgment has since been paid to Appellants.]

**Confession of Judg[]ment**

On November 30, 2020[,] Appellants filed a [c]omplaint in [Montgomery County] for [c]onfession of [j]udg[]ment pursuant to Pa.R.C[iv].P. 2950 *et seq*., alleging that, based on the November 12, 2020 judgment, they were entitled to receive restoration costs in the amount of $141,502.48 and a 10% attorney's commission in the amount of $14,150.24 for a total of $155,652.72. The [c]omplaint also alleged that "to the extent [Appellants] incur attorney's fees in excess of the 10% attorney's commission in the warrant of attorney, [they] are entitled to such attorney's fees."

The [c]omplaint in [c]onfession of [j]udgment was served on [Appellee] via hand-delivery on December 14, 2020. Twelve … weeks later, on March 10, 2021, [Appellee] filed a [p]etition to [o]pen and/or [s]trike [c]onfession of [j]udgment and for [s]tay of [p]roceedings pursuant to Pa.[]R.C[iv].P. 2959. On April 12, 2021, Appellants filed a [r]esponse alleging that the [p]etition to [o]pen and/or [s]trike [j]udgment was filed untimely because it was filed eighty-six … days after the [n]otice of [e]xecution was served on Appellee.

On June 2, 2022, during the pendency of [the lower] court's review of the pleadings related to the [c]onfession of [j]udgment, [Appellants] filed a [p]etition to [r]eassess [d]amages. The [p]etition alleged that Appellant[s have] incurred an additional $165,278.69 in additional attorneys' fees and costs over and above the amount due in the original [c]omplaint as well as additional interest and late charges for a total of $346,225.41.

A hearing was held on August 4, 2022[,] to address Keystone's petition to [o]pen and/or [s]trike [c]onfession of [j]udgment and [Appellants'] [r]eponse thereto. In light of all circumstances surrounding this protracted litigation, [the lower] court found that [Appellee] provided a reasonable explanation for its failure to respon[d] and ruled the delay excusable. On August 22, 2022, [the lower] court granted Appellee's [p]etition to [o]pen [j]udgment. As [Appellants] chose not to have the arbitrator

determine the amount of restoration damages owed, a separate hearing was held by [the lower] court on January 9, 2023[,] to establish the amount of damages owed to Appellant[s.] Prior to the January 9 damages hearing, [Appellants] filed a [m]otion *in [l]imine* seeking to preclude [Appellee] from presenting evidence related to individual items [comprising] the restoration costs. This motion was denied.

On March 15, 2023, [the lower] court issued a lengthy [d]ecision outlining its interpretation of the [L]ease and the damages proved through evidence and testimony at the January 9 hearing.

Trial Court Opinion, 8/3/23, at 1-7 (footnotes and record citations omitted).

Contemporaneous with its decision, the court ultimately concluded that Appellants were due $106,003.40.[2] After Appellants entered judgment on this order determining damages, they filed a timely notice of appeal and correspondingly submitted a timely concise statement of errors complained of on appeal.

On appeal, Appellants raise eight issues:

1. Did the lower court err in opening the confessed judgment where Appellee failed to present "clear, direct, precise and

---

[2] We note there is ambiguity in the confession of judgment amount. The court found that Appellee owed Appellants $103,260.73 in restoration damages. Moreover, the court determined that Appellee owed $10,326.07 in attorneys' fees, 10% of the damage award. Through aggregation of the two amounts, Appellee owed Appellants $113,586.80. The court then subtracted Appellee's $6,894.00 security deposit from that figure, arriving at $106,692.80. In the court's subsequent opinion, it wrote that its ultimate award amounted to "$106.692.80." Trial Court Opinion, 8/3/23, at 19. However, without any explanation, in the order line of its March 2023 decision, the court confessed judgment in favor of Appellants and against Appellee "in the amount of $106,003.40." Decision, 3/15/23, at 5 (unpaginated). Appellants' praecipe to enter judgment adopts that latter amount. **See** Praecipe to Enter Judgment, 5/25/23.

believable evidence of its meritorious defenses" in its petition to open judgment?

2. Did the lower court err in denying Appellants' motion *in limine*?

3. Did the lower court err in limiting the recovery of reasonable attorneys' fees to 10% of the restoration costs that were awarded?

4. Did the lower court err in considering defenses to the confession of judgment which were not properly set for in the petition to open judgment?

5. Did the lower court err in denying Appellants' motion to reassess damages?

6. Did the lower court err in holding that Appellants were not entitled to recover their reasonable attorneys' fees pursuant to Paragraph 20.I of the Lease?

7. Did the lower court err in holding that the proposals and costs for Valley Floor Covering, Budget Concrete, Rockwell, and Metering Sales and Service, Inc., were not necessary to restore the Premises?

8. Did the lower court err in failing to award interest and late charges under Paragraphs 4.D(i) and (ii) of the Lease?

*See* Appellants' Brief, at 6-7.

Most of Appellants' issues explicitly or derivatively challenge the lower court's grant of Appellee's petition to open the confessed judgment. A petition to open a confessed judgment may be granted if the petitioner (1) acts promptly to open the judgment, (2) alleges a meritorious defense, and (3) can produce sufficient evidence to require submission of the case to a jury. *See SDO Fund II D32, LLC v. Donahue*, 234 A.3d 738, 742 (Pa. Super. 2020); *Neducsin v. Caplan*, 121 A.3d 498, 506 (Pa. Super. 2015). "[A] meritorious defense is ... a defense ... that if proved at trial would justify

relief." ***Smith v. Morrell Beer Distr., Inc.***, 29 A.3d 23, 26 (Pa. Super. 2011) (quoting ***Penn-Delco Sch. Dist. v. Bell Atl.-Pa. Inc.***, 745 A.2d 14, 19 (Pa. Super. 1999)).

> A petitioner must offer clear, direct, precise and believable evidence of a meritorious defense, sufficient to raise a jury question. In determining whether sufficient evidence has been presented, [courts should] employ the same standard as in a directed verdict: [the trial court must] view all the evidence in the light most favorable to the petitioner and accept as true all evidence and proper inferences therefrom supporting the defense while ... reject[ing] adverse allegations of the party obtaining the judgment.

***Stahl Oil Co., Inc. v. Helsel***, 860 A.2d 508, 512 (Pa. Super. 2004) (internal citations omitted). In an appeal from the granting of a petition to open, we note that "[a] petition to open judgment is an appeal to the equitable powers of the court. As such[,] it is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of discretion." ***PNC Bank v. Kerr***, 802 A.2d 634, 638 (Pa. Super. 2002) (citation omitted).

Appellants do not appear to challenge whether Appellee was prompt in filing its petition to open. Instead, they suggest that the lower court improperly relied on two bases in granting Appellee's petition. Specifically, the court found that Appellee asserted two meritorious defenses: "(1) the equitable theory of recoupment based on the fact that [Appellants] retained [Appellee's] security deposit; and (2) that the Premises had been relet to a new unrelated commercial tenant." Appellant's Brief, at 17; ***see also*** Trial Court Opinion, 8/3/23, at 11 (indicating that Appellee "put[] forth the

- 7 -

equitable theory of recoupment as a meritorious defense[]" and had a further defensible position insofar as "the demised premises had been relet to a new unrelated commercial tenant[]").

In Appellee's petition to open, under the heading "Defendant/Petition Has Meritorious Defenses," it lists several reasons as to why said petition should be granted: (1) res judicata, (2) recoupment, (3) collateral estoppel, (4) prior resolution of the same subject matter in arbitration, and (5) waiver. Petition to Open, 3/10/21, at 15-19. Of these five, the lower court found merit to Appellee's alleged defense of recoupment insofar as Appellee could plausibly set-off the amount it owed to Appellants via a security deposit that they were holding in the amount of $6,894.00.[3]

_____

[3] The lower court also found that Appellee had "mention[ed]" that "the demised premises had been relet to a new unrelated commercial tenant" which would "necessarily factor into calculations at the damages phase." Trial Court Opinion, 8/3/23, at 11. The court further noted that even if had found Appellee's "presentation of [the recoupment] defense lacking (which it did not), it may still open the judgment as a matter of law to examine the contract." Trial Court Opinion, 8/3/23, at 11. However, this defense was not valid as it was not raised in the Appellee's petition to open. While ***Neducsin***, a case cited by the lower court, does indicate that a trial court may decide the validity of a defense that is "presented … without adequate substance" if the issue is one of "contract construction and interpretation" as such a claim is "generally a question of law for the court to decide[,]" 121 A.3d at 507 (citation omitted), nowhere in ***Neducsin*** does it permit a court to craft defenses that have not been argued, which is what the finding of reletting appears to be. As best can be gleaned from Appellee's petition, such a "defense" was not raised. Although the court highlights the arbitration order in which it was written that Appellee "would be entitled to a credit for the repairs done by the new tenant. [Appellants] would not be entitled to double recover from the cost of the same repair[,]" Trial Court Opinion, 8/3/23, at 12 *(Footnote Continued Next Page)*

Appellants argue that the recoupment defense is facially unmeritorious given both the Lease's explicit language and prior case law.

The commercial lease at issue here is governed by contract law principles. ***See Pa. Envt'l. Def. Found. v. Commonwealth***, 255 A.3d 289, 304 (Pa. 2021). As such, the standard of review we utilize in interpretation of contracts is well-established:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Rosiecki v. Rosiecki***, 231 A.3d 928, 933 (Pa. Super. 2020) (citation omitted).

> The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. To accomplish this goal, each and every part of the contract must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument.

***Tuthill v. Tuthill***, 763 A.2d 417, 419 (Pa. Super. 2000) (citation omitted). Finally, "it is not the function of the Court to rewrite [a contract] or give it a construction in conflict with the accepted and plain meaning of the language used." ***Robert F. Felte, Inc. v. White***, 302 A.2d 347, 351 (Pa. 1973) (citation

---

(citation omitted), Appellee *never actually argued this alleged defense* in its petition. ***But see*** Pa.R.Civ.P. 2959(a)(1) (requiring "all grounds for relief" to "be asserted in a single petition[]").

and quotation marks omitted).

In Paragraph 38.O, it states that "[Appellee] agrees that any and all payments due hereunder shall be due and payable by [Appellee] without any deduction or setoff whatsoever, and [Appellee] hereby expressly waives any right to deduct or setoff any amount from any such payments." Lease Agreement, 11/19/12, at 33. Paragraph 14 indicates that in the event of default, Appellants

> may use, apply or retain all or any portion of said [security] deposit for the payment of any … charge in default or for the payment of any other sum to which [Appellee] may become obligated by reason of [Appellee's] default, or to compensate [Appellants] for any loss or damage which [Appellants] may suffer thereby.

*Id*., at 15. As to the former provision, the term "payments" is not defined under the Lease. ***See id***., at 1-2 (definitions section of the Lease). Moreover, as identified *supra*, the Lease prohibits Appellee from deducting or setting off any amounts from "payments due hereunder[.]" ***Id***., at 33. As the payments are designated as those made "hereunder" the Lease, ***id.***, the more natural reading of the Lease is that the "payments" refer to rent and any other payments specifically delineated in the operative contract rather than payments associated with the subsequent legal action Appellants pursued to obtain damages due to Appellee having failed to remediate the property. Therefore, we find no manifest abuse of discretion in the court rejecting Appellants' claim that the Lease prohibited contemplation of the security deposit as a defense under these set of circumstances. As to Paragraph 14,

- 10 -

although Appellants are correct insofar as they had the ability to utilize any portion of Appellee's security deposit in the event of a breach, this right afforded to Appellants does not foreclose Appellee from being able to challenge, as a defense, Appellants' continued custody and unqualified use of that deposit.

Beyond the contract itself, while Appellants are correct that "[a]n unliquidated counterclaim or set-off cannot be asserted as a ground for opening a confessed judgment[,]" **Hopewell Estates, Inc. v. Kent**, 646 A.2d 1192, 1195 (Pa. Super. 1994); **see also Hellam Tp. v. DiCicco**, 429 A.2d 1183, 1186 (Pa. Super. 1981), this case does not involve an unliquidated counterclaim or set-off. In **Hopewell Estates**, the lower court entered a confessed judgment stemming from unpaid surveying and engineering work. **See** 646 A.2d at 1193. Correspondingly, the debtor filed a petition to open the judgment. **See id**. While that petition was pending, the petitioning party also "filed a civil complaint … in which it claimed damages for professional negligence." **Id.**, at 1193-94. Ultimately, this Court held that this independent unliquidated claim in professional negligence could not have been "asserted as a basis for opening the judgment[.]" **Id**., at 1195.

Here, Appellee has not pleaded a defense that could be construed as unliquidated, as the amount of its security deposit is a known quantity. Moreover, Appellee's defense is directly related to Appellants' remediation damage calculations and therefore is not a "setoff." **See Koken v. Legion**

*Ins. Co.*, 900 A.2d 418, 423 (Pa. Cmwlth. 2006) (discussing the differences between "recoupment" and "setoff", identifying the defense of recoupment as arising from the same transaction as the plaintiff's cause of action rather than a separate mutual obligation in the form of a debt or credit). Therefore, reliance on **Hopewell Estates** is inapposite. Appellants are due no relief on their first issue.

In their second contention, Appellants assert that the court erred by denying their motion *in limine*, which sought to preclude Appellee from "offering any evidence or testimony at the hearing in connection with [Appellee's] Petition to Open …challenging any individual item comprising the Restoration Costs set forth in Exhibit E to the Complaint in Confession of Judgment or that goes beyond Keystone's defenses set forth in its Petition to Open[.]" Appellant's Brief, at 24 (capitalizations and alteration in original). As best can be discerned, Appellants seem to be, yet again, contesting the appropriateness of the court's determination to open the judgment, a decision we have already adjudicated as within its discretion, *supra*.

While Appellants are correct in noting that when a judgment is opened, the "issues to be tried shall be defined by the complaint …, … the petition, answer and the order of the court opening the judgment[,]" Pa.R.Civ.P. 2960,

there is nothing of record to establish that the court ran afoul of this Rule.[4]

Although Appellants allege that the court did not follow our Rules of Civil Procedure and further take umbrage with the court's order opening the judgment insofar as it merely "schedule[d] a hearing to address the amount of the judgment[,]" Appellant's Brief, at 25, Appellants have failed to demonstrate any sort of reversible procedural violation by denying their motion *in limine*.

In their third claim, Appellants allege that the court erred in granting attorneys' fees that amounted to 10% of the remediation damages. Specifically, Appellants argue four errors: (1) the court *sua sponte* raised defenses for Appellee that were not asserted in its petition to open; (2) the court improperly denied Appellants' motion to reassess damages; (3) the court misread a provision in the Lease defining attorneys' fees; and (4) the court misread another provision in the Lease describing the amount of attorneys' fees that were recoverable. ***See id.***, at 26.

As evidenced by their confession of judgment complaint, Appellants believe they are authorized to obtain attorneys' fees "in excess of the 10% attorney's commission in the warrant of attorney[.]" ***Id.***; ***see also*** Complaint, at ¶ 19 (stating that Appellees are "entitled" to incurred attorneys' fees in

---

[4] In the portion of their brief devoted to this claim, Appellants singularly cite **Neduscin**, but solely in the context of again asserting that the court misread the holding of that case.

excess of the attorneys' commission in the warrant of attorney). However, in its petition to open, Appellee did "not assert any defenses to the claim for attorneys' fees and costs." Appellant's Brief, at 26. Notwithstanding its lack of defense, "the trial court, *sua sponte*, asserted defenses to the award of attorneys' fees which [Appellee] did not raise." ***Id***., at 27.

Preliminarily, we note that Appellants specifically sought, and ultimately obtained, attorneys' fees amounting to 10% of the remediation damages. While their confession of judgment filing generally avers that they are entitled to fees that are in excess of the 10% baseline established in the Lease, that same document provides explicit quantification of both the restoration costs and 10% attorneys' commission of those costs. However, the confession of judgment also prospectively requests "all other fees and costs provided in the Lease including without limitation counsel fees to the extent they exceed the amount stated in the Complaint, as provided in the Lease." Complaint, at 6.

It is true that Appellee, in its petition to open the judgment, did "not assert any defenses to the claim for attorneys' fees and costs." Appellants' Brief, at 26. However, when Appellants filed a subsequent petition to reassess damages, seeking to "increase the amount of the attorneys' fees in the judgment by the additional attorneys' fees incurred," ***id***., at 28, they necessarily opened the door for consideration of the amount of attorneys' fees that exceeded the scope of the original petition to open, predicated on the court's interpretation of the contract and facts asserted thereon. Relatedly,

the court determined that "[t]he decision to … conduct a hearing on damages subsumed Appellants' Motion to Reassess." Trial Court Opinion, 8/3/23, at 12.

A petition to reassess damages "invokes the trial court's equitable power to enforce the underlying judgment and to grant relief until the judgment is discharged or satisfied." **PNC Bank, N.A. v. Unknown Heirs**, 929 A.2d 219, 227 n.3 (Pa. Super. 2007). However, the process of reassessment still requires due process considerations, such as notice and the opportunity to be heard. **See, e.g.**, **EMC Mortg., LLC v. Biddle**, 114 A.3d 1057, 1072 (Pa. Super. 2015) (a petition to reassess damages requires an evidentiary hearing in the event there is a factual dispute).

As to the specific components of the Lease governing attorneys' fees, Appellants first challenge the court's construal of paragraph 20(I), which states, in relevant part:

> If Lessor at any time … elects to pay, any sum of money … which will require the payment of any sum of money by reason of the failure of Lessee to comply with any provisions hereof, or if Lessor is compelled to incur any expense, including reasonable counsel fees, in instituting, prosecuting or defending against any action or proceedings instituted by reason of any default of Lessee hereunder, the amount of such payments or expenses shall be paid by Lessee to Lessor as Additional Rent, on the next day following such payment or the incurring of such expenses upon which a regular monthly rental is due, together with interest thereon at a rate set forth herein.

Lease Agreement, 11/19/12, at 18. Because the Lease was terminated on February 28, 2018, the court interpreted this provision to mean that based on the date when the complaint confessing judgment was filed, there were "no

- 15 -

monthly rental due dates to reference relative to this provision and as such no attorney's fees [were] warranted." Trial Court Opinion, 8/3/23, at 17. Despite Appellants' arguments to the contrary, this provision clearly contemplates a payment scheme in which the Lease is still in effect.

The more pertinent section of the Lease regarding attorneys' fees is paragraph 20(L). That section allows for the lessor,[5] Appellants, to confess judgment against the lessee, Appellee, in the event of an uncured default for

> rent and/or the charges, payments, costs and expenses herein reserved as rent, or herein agreed to be paid by Lessee, and then due and unpaid and for interest and costs, together with a reasonable attorney's commission of not less than Ten Percent (10%) of such rents or other charges or expenses then due.

Lease Agreement, 11/19/12, at 20.

Appellants argue that "[t]he trial court concluded that the above language … somehow should be read to establish the maximum amount of attorneys' fees to which [they] are entitled." Appellants' Brief, at 34. However, a thorough reading of the record leads to the conclusion that the court never found that 10% was the *maximum* amount of attorneys' fees possible, notwithstanding its ultimate award of 10% as it pertained to those fees. **See** Trial Court Opinion, 8/3/23, at 18. Therefore, the claim that the lower court "read this language as placing a limit on the amount of fees to which

---

[5] Both Mark Hankin and Hanmar Associates, MLP, are listed as lessors under the Lease. However, the Lease only refers to them singularly, as lessor. We adopt the Lease's naming convention.

[Appellants were] entitled," Appellants' Brief, at 35, is incorrect. Instead, after holding a hearing and considering Appellants' submissions and argument, the court found 10% to be a *reasonable* amount of attorneys' fees.

Other than citing to our standard of review for contract interpretation, Appellants have not shown anything palpably wrong with the court's adjudication of "reasonable" attorneys' fees. In particular, Appellants have failed to demonstrate a clear basis for attorneys' fees exceeding the percentage they were awarded. In other words, beyond their bald assertions and references to apparent procedural irregularities, Appellants have not provided any context whatsoever to the amount in attorneys' fees that they sought during the damages hearing. Without being provided with any strong basis to deviate from the court's ultimate award of 10%, we cannot fault its conclusion in reaching that numerical determination. Therefore, Appellants' attorneys' fees-based claim fails.

Appellants next aver that the court erred by holding that certain proposals and costs were not necessary to restore the premises. The lower court found that the remediation proposals by Valley Floor Covering, Budget Concrete, Rockwell, and Metering Sales and Service, Inc., were not necessary to restore the property. In total, the cost for the amount of work cited in these proposals amounted to $31,654.25. The court determined that although Appellants claimed such work was necessary, "this work was not completed [in] the past five … years[,]" Decision, 3/15/23, at ¶ 18, which is the

- 17 -

approximate length of time that had elapsed since the Lease had been terminated. Appellants did not produce clear evidence establishing that the proposals, which simply list work to be performed and do not prove that Appellee caused damage necessitating the work, were necessary to restore the condition of the premises, especially in light of the lengthy span of time between lease termination and the present action. After a thorough review of Appellants' arguments and the record, we are not persuaded that the trial court abused its discretion in making this determination or committed an error of law by separating these proposals from the restoration expenses that Appellants had actually incurred and were awarded.

Finally, Appellants argue that the court erred by not awarding them interest and late charges. In support, Appellants highlight Lease paragraphs 4.D.(i) and (ii).

The former paragraph states:

If Lessee shall fail to make payments of any rent or other cash payments due to Lessor within the time periods prescribed in the Lease, Lessee shall pay to Lessor interest from the end of the payment period to the date of Lessor's receipt of such payment at an interest rate of Five Hundred (500) basis points above the prime interest rate charged during the time of said delinquency at the Wall Street Journal Prime. Payment for installments of Minimum Annual Rent, and Additional Rent and other payments hereunder shall be defined under Sections 3 and 4 herein above and payment period for all other items shall be fined as ten (10) days form the date of any invoice from Lessor to Lessee.

Lease Agreement, 11/19/12, at 7. The latter paragraph obligates Appellee to pay, after a ten-day grace period, a late charge in the event it does not pay

- 18 -

"any installment of Minimum Annual rent or any item of Additional Rent" at a rate of five cents for each dollar then due. *Id*. Appellants contend that they demonstrated at the hearing their entitlement to $28,983 in additional interest and $7,075 in late charges. *See* Appellant's Brief, at 38-39.

The portion of the Lease that Appellants rely on is titled "Delinquent Payments." The court found this section to deal solely with "late charges for amounts owed, that go unpaid for a certain period of time." Trial Court Opinion, 8/3/23, at 18. The court then wrote that because "there was no specific award for restoration costs prior to [its] March 15, 2023 ruling, there were no delinquent payments at issue at the time of th[e] hearing." *Id*.

Parsing the contract, the former at-issue section is operative when the lessee fails to make "other cash payments due to Lessor within the time periods prescribed[.]" Lease Agreement, 11/19/12, at 7. Appellants fail to demonstrate how this language applies to restoration damages sought and obtained via a subsequent legal action. Additionally, as to late fees defined in the latter section, Appellants have not shown that restoration fees constitute "Additional Rent" that had been realized on a specific "day" therefore becoming "due and payable[.]" Lease Agreement, 11/19/12, at 7. Without any clear indicia that Appellants are authorized, under the Lease, to obtain either interest or late fees, we conclude that the court did not commit an error of law or abuse its discretion in not awarding either.

In finding no merit to any of the issues Appellants have raised, we affirm

the confessed judgment in Appellants' favor.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/13/2024</u>